# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:21-cr-20052-02-DDC |
| ) | |
| MARIA ILEANA COTA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case comes before the Court on Defendant Maria Ileana Cota's Motion to Amend Pretrial Release Conditions (ECF No. 227). The Court conducted a hearing on the Motion via video conference, on January 26, 2022. The Government appeared through counsel David P. Zabel and Tris Hunt. Defendant appeared through counsel William Dale Whitice and David McDonald. The Court has reviewed the Motion, the Government's Response (ECF No. 233) and Supplemental Response (ECF No. 236) and considered the arguments of counsel, and is prepared to rule.

Defendant and 14 co-defendants are charged in this case with conspiracy to distribute 5 kilograms or more of cocaine. The Criminal Complaint that initiated the case consists of 84 pages, alleging the operation of a large drug trafficking organization (DTO), including multiple controlled purchases from various of the defendants over more than two and one-half years.[1] After her arrest and initial appearance on September 2, 2021, over the objections of the Government, the Court ordered Defendant released subject to conditions. Condition 7(g) of the Order setting Defendant's conditions of release directs Defendant "to avoid all contact, directly

---

[1] *See* Criminal Complaint, Case No. 21-mj-08173-TJJ (ECF No. 1). The Government subsequently indicted all of the defendants in Case No. 21-20052 (ECF No. 84). The Court will not summarize the lengthy allegations set out in the Complaint here, but rather will only discuss those factual allegations in the context of and as they pertain to the Court's ruling on Defendant's Motion.

or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including [Santiago Gamboa-Saenz and all other co-defendants]."[2]

Defendant's Motion states that she and Gamboa-Saenz share a child. The child is approximately two-years old and prior to Defendant's arrest in this case, she co-habited with Gamboa-Saenz and the child. While on release, Defendant has been residing with the child in Colorado. Defendant requests "a minor amendment" to her conditions of release to "allow [her] the opportunity to speak with the child's father [, co-defendant Gamboa-Saenz,] concerning matters pertaining solely to family, including issues related to the child" and "to afford the child the opportunity to interact with his father."[3]

The Government opposes the Motion, arguing it would be impossible to effectively monitor communications between Defendant and Gamboa-Saenz to ensure that they limit their conversations to family matters and issues related to their child. Gamboa-Saenz is detained at the Chase County Jail, from which he would be able to make video calls for a nominal fee. But, the Government indicates the United States Probation Office (USPO) would be responsible for monitoring calls between Gamboa-Saenz and Defendant. And, even though calls to/from the Chase County Jail can be recorded, the Government notes it has been informed by U.S. Probation Officer Diana Kerns that the USPO "is not allowed to monitor recorded jail communications of defendants."[4] Further to the inability to effectively monitor the requested communications, the Government says its investigation revealed that members of the DTO often spoke in code or truncated statements so that the meaning of their statements were only known to

---

[2] ECF No. 149 at 2.
[3] ECF No. 227 at 2.
[4] ECF No. 233 at 5.

them.[5] In addition, the Government contends Gamboa-Saenz is the leader of the DTO and Defendant worked closely with him in activities involving the DTO.

At the conclusion of the hearing on the Motion, the Court indicated that it was inclined to deny Defendant's request to modify her conditions of release and explained in detail its rationale. But, out of an abundance of caution, the Court sua sponte raised the issue of whether there might be Constitutional considerations or constraints on the Court's authority to restrict communications between Defendant and the father of her child, which had not been addressed by the parties.[6] The Court set a deadline of February 1, 2022 for the parties to brief the issue and declined to rule on the Motion until after it had the opportunity to review the briefing. The Government filed a timely supplemental response. Defendant filed nothing.

Title 18, U.S. Code Section 3142(c)(1)(B)(v) expressly authorizes the judicial officer to impose a condition of release that a released defendant "avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense." Clearly the Court had authority to impose the condition that while on pretrial release Defendant have no contact with her co-defendants -- all of whom are potential witnesses to the crimes charged in this case.

The Court finds that Defendant's relationship with her co-defendant Gamboa-Saenz and the fact that he fathered their child does not create any Constitutional right, akin to a right to marry, in Defendant that would prohibit the Court from imposing a no contact order between Defendant and Gamboa-Saenz. Indeed, it is not uncommon for courts to impose no contact

---

[5] *Id.* at 6.

[6] The Court also raised the issue of whether the Motion actually constituted a request to reopen the detention hearing, pursuant to 18 U.S.C. § 3142(f), requiring a showing that information exists that was not known to the movant at the time of the detention hearing. The Court has concluded, however, that the Motion is merely a motion to amend the order setting conditions of release, pursuant to 18 U.S.C. § 3142(c)(3), and does not require a showing of new information not known at the time of the detention hearing. The Court will not further belabor that issue in this Order.

orders between married co-defendants as a condition of pretrial release.[7] In any event, as the Government aptly notes, Defendant and Gamboa-Saenz are not married. In fact, the Government indicates it has information that Gamboa-Saenz is still married to someone else. Defendant has not disputed this. Nor does the fact that Defendant and Gamboa-Saenz are in a relationship and share a child together create any Constitutional right in Defendant that would prohibit the Court from imposing a no contact order between them.[8] Notably, the Court raised this issue sua sponte – Defendant never raised it and didn't submit a brief on the issue when given the opportunity to do so by the Court.

Even if there were some Constitutional right at issue, the Court finds that the no contact condition imposed by the Court in this case is justified, necessary, and that no more narrowly tailored condition would reasonably assure the safety of any other person and the community. Defendant and Gamboa-Saenz are co-defendants and there is strong evidence that they were both significantly involved and worked together in the DTO that is the subject of the Indictment. The DTO allegedly continued trafficking drugs after law enforcement activities began. The Government indicates its investigation revealed that members of this DTO often spoke in code or truncated statements, the meanings of which were only known to them. And, there are allegations that Gamboa-Saenz has ordered acts of violence, such as arson, and other attempts to locate and threaten cooperating individuals. The no contact order here is essential to ensure the integrity of our criminal justice system – to ensure witness tampering, collusion, or other interference with the prosecution of the case does not occur.

---

[7] *See U.S. v. Martinez*, No. 4:21-cr-00107-SMR-HCA-1,2, 2021 WL 4169789 at *1 (S.D. Ia. Sept. 13, 2021), and cases cited therein.
[8] *See U.S. v. Pickel*, 500 F. App'x 771, 772–73 (10th Cir. 2012) (upholding a pretrial release condition of no contact between the defendant and his long-term girlfriend, who was also the mother of defendant's young child).

Moreover, there is simply no method or means of monitoring communications between Defendant and her detained co-defendant Gamboa-Saenz. As the Government asserted and the Court has confirmed, the USPO would be responsible for monitoring such communications but it is not allowed to monitor recorded jail communications of detained defendants such as Gamboa-Saenz.

On a final note, the no contact order in this case does not prohibit the young child of Defendant and Gambo-Saenz from having video contact with Gamboa-Saenz, under appropriate circumstances and arrangements. The no contact order is appropriately drafted as narrowly as possible.

**IT IS THEREFORE BY THE COURT ORDERED** that Defendant Maria Ileana Cota's Motion to Amend Pretrial Release Conditions (ECF No. 227) is denied.

**IT IS SO ORDERED.**

Dated this 11th day of February 2022.

Teresa J. James
U.S. Magistrate Judge